IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**TATSIA R.,**[1]

        Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY**,

        Defendant.

Civ. No. 6:21-cv-01813-AA

**OPINION & ORDER**

AIKEN, District Judge:

Plaintiff Stephanie T. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying benefits. The decision of the Commissioner is AFFIRMED and this case is DISMISSED.

## BACKGROUND

On March 29, 2019, Plaintiff filed a Title II application for a period of disability and disability insurance benefits alleging disability beginning on March 16, 2016, which was later amended to May 8, 2017. Tr. 13. The applications were denied initially and upon reconsideration and, at Plaintiff's request, a telephonic hearing was held before an Administrative Law Judge ("ALJ") on January 13, 2021.

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

*Id.* On March 22, 2021, the ALJ issued a decision finding Plaintiff not disabled. Tr. 25.

Plaintiff sought review by the Appeals Council and, on October 18, 2021, the Appeals Counsel denied review making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work

experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of May 8, 2017. Tr. 15.

At step two, the ALJ found that Plaintiff had the following severe impairments: respiratory system disorder; relapsing polychondritis; depressive disorder; and anxiety disorder. Tr. 16. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. *Id.*

The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels with the following limitations: she would require work which entails routine, repetitive tasks, and simple decision making; she should be restricted to a relatively clean work environment, meaning low levels of pollutants; she should avoid concentrated exposure to humidity; she should avoid concentrated exposure to noise, like jackhammers; and she should avoid concentrated exposure to vibration. Tr. 18.

At step four, the ALJ found Plaintiff was unable to perform her past relevant work. Tr. 23. At step five, the ALJ found that Plaintiff was capable of performing work that existed in significant numbers in the national economy including work as a photocopy machine operator, room service clerk, and office helper. Tr. 24-25. As a result, the ALJ found that Plaintiff was not disabled. Tr. 25.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful

normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff alleges the ALJ erred by (1) improperly discounting Plaintiff's subjective symptom testimony; (2) improperly discounting lay witness testimony; and (3) improperly weighing the medical opinion evidence.

### I. Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred by discounting her subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discounting the claimant's testimony regarding the severity of symptoms. *Id.*

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (internal quotation marks and citation omitted). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's testimony, such as prior inconsistent statements concerning

the symptoms, testimony that appears less than candid, unexplained failure to seek treatment or follow a prescribed course of treatment, or a claimant's daily activities. *Id.*

Here, Plaintiff testified that she lives in a duplex with her boyfriend. Tr. 37-38. In terms of household chores, Plaintiff testified that she handles the laundry, splits the grocery shopping, the cleaning, the dishes, and prepares her own meals. Tr. 44-45. Plaintiff testified that she watches television and reads, but that she is only able to read a few pages at a time. Tr. 39. Plaintiff testified that she struggles with reading because of difficulty maintaining attention and because of eye pain. Tr. 51. Plaintiff has a driver's license and is able to drive. Tr. 39. When asked if she uses a computer, Plaintiff testified that she prefers to use her phone to send text messages, check her email, and look up information. *Id.* Plaintiff walks for exercise. Tr. 40. Plaintiff testified that she would go out to see family and for walks in 2017 and 2018, but that her walks became less frequent in 2019 when her joint pain worsened. Tr. 41.

Plaintiff testified that she has made several international trips in the relevant period. In 2018, Plaintiff went to China and testified that she slept on the flight and, after arriving, was in bed for three days. Tr. 48. Plaintiff went on a tour of the Great Wal; but testified that she did not go hiking. Tr. 48-49. Plaintiff testified that she went on other sightseeing tours while in China. Tr. 49.

In 2018 and 2019, Plaintiff went on several trips to Mexico. Tr. 49. Plaintiff said that the trip was during a "good week" and that she spent the time in the hotel room or by the pool. *Id.*

Plaintiff also went on a motorcycle trip and testified that, at the time, she had more mobility than she did by the time of the hearing. Tr. 49-50. Plaintiff rode on the back of the motorcycle and testified that they would stop after every hour or two for her to walk. Tr. 50.

Plaintiff left her last job because of her impairments and testified that her head was swollen and her joints ached from her relapsing polychondritis. Tr. 46. Plaintiff testified that she had not returned to work because of her symptoms and the side effects of her eleven medications. *Id.*

Plaintiff experiences flare-ups, which first manifest with ear pain, then swelling and discharge. Tr. 46-47. Plaintiff has experienced joint pain and swelling since 2020, which varies whether she's having a good or bad day. Tr. 47. Plaintiff testified that she has an average of three good days to every three or four bad days and, if she has a flare up, she will be "in bed all week with ice packs and trying to keep the pain at bay." Tr. 47-48.

Plaintiff spends two hours reclining in the morning, takes a two-hour nap in the afternoon, and reclines for a further two hours in the evening. Tr. 52. Plaintiff testified that she has joint and back pain if she sits for an hour and she needs to move around. Tr. 53. Plaintiff testified that she has extreme side effects from her medication. Tr. 58.

The ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 19-20.

The ALJ found that the objective medical evidence did not support Plaintiff's claims and testimony. Tr. 20-21. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony," it is a factor that the ALJ can consider. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). However, a conflict between a claimant's testimony and the objective medical evidence is a proper basis for discounting subjective symptom testimony. *Morgan v. Comm'r*, 169 F.3d 595, 600 (9th Cir. 1999).

Here, Plaintiff's treatment providers observed normal gait and full range of motion. Tr. 371 (July 2017, finding normal gait); 448 (November 2017, finding "full nonpainful range of motion throughout bilateral upper and lower extremities,"); 537 (October 2017, finding same); 677 (May 2019, finding normal range of motion); 743 (February 2018, finding normal gait and station); 799-800 (July 2017, finding normal gait and normal range of motion). Plaintiff's treatment providers also found normal strength. Tr. 448 (November 2017, finding 5/5 muscle strength in bilateral upper and lower extremities); 537 (October 2017, finding same); 423 (April 2018, finding same); 511 (April 2018, finding same). Despite Plaintiff's claims of vision problems, Plaintiff's eye exams revealed only minor issues with her vision. Tr. 1041-43.

With respect to Plaintiff's mental impairments, the ALJ also observed that the objective medical evidence was not consistent with Plaintiff's testimony. Tr. 20. This is supported by the record. Tr. 381 (October 2017, Plaintiff was pleasant and cooperative); 418 (October 2017, finding normal mood and affect, normal behavior); 771 (August 2019, finding good eye contact, "goal-oriented mental activity," logical and coherent thought, and average cognitive abilities); 805 (March 2020, finding friendly attitude, cooperative behavior, and above average intellect); 861 (May 2020, finding plaintiff pleasant, with "better controlled" anxiety); 879 (July 2020, finding friendly attitude, average intellect, and cooperative behavior); 895 (September 2020, finding normal speech, mildly anxious mood, and goal-directed thought processes); 1011 (May 2020, finding normal affect, speech, and through processes); 1014 (June 2020, finding cooperative attitude, euthymic mood, linear thinking, and unimpaired attention and concentration).

On this record, the Court concludes that the ALJ reasonably considered the objective medical evidence in assessing Plaintiff's testimony.

The ALJ found that Plaintiff's daily activities were inconsistent with her allegations. Tr. 20-21. As noted, a claimant's daily activities are a valid consideration in assessing subjective symptom testimony. *Ghanim*, 763 F.3d at 1163. Here, the ALJ specifically noted Plaintiff's "significant travel," to Mexico and China, as well as her motorcycle trip as undermining her testimony concerning her limitations. Tr. 20. This is a valid consideration. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 n.3 (9th Cir. 2008). Here, Plaintiff testified that she has trouble sitting upright for more than an

hour, Tr. 53, which the ALJ reasonably found was inconsistent with Plaintiff's travel. Tr. 20-21. Plaintiff also testified that she has trouble handling and hold on to objects. Tr. 57. The ALJ reasonably found that this testimony was inconsistent with Plaintiff's testimony concerning her daily activities, such as doing dishes and laundry. Tr. 20. Similarly, the ALJ noted that Plaintiff's testimony concerning her difficulty with reading, Tr. 51, was inconsistent with her testimony concerning her use of her phone and the internet. Tr. 21, 39. On this record, the Court concludes that the ALJ reasonably considered Plaintiff's daily activities and her travel in discounting Plaintiff's subjective symptom testimony.

In sum, the Court concludes that the ALJ gave sufficient clear and convincing reasons for discounting Plaintiff's subjective symptom testimony.

## II. Lay Witness Testimony

Plaintiff assets that the ALJ erred by discounting the lay witness evidence provided by Plaintiff's boyfriend, Jon Clark. "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

Mr. Clark prepared a third-party function report for Plaintiff. In his report, Mr. Clark reported that Plaintiff does household chores, such as washing dishes and laundry. Tr. 326. Mr. Clark reported that Plaintiff can no longer read books for more than ten to fifteen minutes because of her difficulties concentrating. Tr. 327. Mr. Clark checked boxes indicating that Plaintiff has difficulty lifting, squatting,

standing, reaching, walking, sitting, climbing stairs, remembering, completing tasks, concentrating, following instructions, using her hands, and getting along with others. Tr. 328. Mr. Clark stated that Plaintiff could sit for two hours with breaks to move around and that she had trouble holding on to things with dropping them. *Id.* Plaintiff could walk for three blocks before needing to stop and rest. Tr. 329.

Plaintiff asserts that the ALJ failed to discuss Mr. Clark's testimony. This is not the case—at the end of the section discussing Plaintiff's testimony, the ALJ added that Mr. Clark "reported similar limitations," before explaining in the following pages why the testimony was being discounted. Tr. 19-21. In doing so, the ALJ combined discussion of Plaintiff's own subjective symptom testimony and the lay witness testimony, but the ALJ did so in such a way that the reasoning for both is clearly discernable in the opinion. And, as the Court has already determined that the ALJ provided clear and convincing reasons for discounting Plaintiff's testimony, those same reasons will suffice to provide a germane reason for discounting the testimony of Mr. Clark. *See Valentine v. Comm'r*, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, and because Ms. Valentine's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."). The Court concludes that the ALJ did not err in considering the lay witness evidence.

### III. Medical Opinion Evidence

Plaintiff asserts that the ALJ erred by discounting the medical opinion evidence of Plaintiff's chiropractor Brian Reuben, D.C., and Plaintiff's treating nurse, Nick Campo, PMHNP. The Ninth Circuit has clarified that under the new regulations, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship—no longer applies." *Woods v. Kijakazi*, 32 F.4th 785, 787. Now, an ALJ's "decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id*. "The most important factors that the agency considers when evaluating the persuasiveness of medical opinions are *supportability* and *consistency*." *Id*. at 791 (emphasis added, internal quotation marks and citations omitted). For supportability, the regulations provide that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). As for consistency: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

#### A. Dr. Reuben

Plaintiff's chiropractor, Dr. Reuben, prepared a medical source statement in December 2020. Tr. 999-1003. Dr. Reuben opined that Plaintiff could sit, stand, or

walk for thirty minutes before needing to rest and that she must rest or recline for an hour during an eight-hour workday. Tr. 1000. Plaintiff could sit or stand/walk for a total combined period of one hour and an eight-hour workday. *Id.* She would require the ability to change position and movement throughout the day. *Id.*

Plaintiff would have no limitation on her ability to lift or carry up to five pounds; she could lift up to fifteen pounds for one hour out of an eight-hour day and she could carry up to ten pounds for one hour out of an eight-hour day. Tr. 1000. In terms of manipulative limitations, Plaintiff could handle, finger, or feel for thirty minutes in an eight-hour day. Tr. 1000-01. Because of her pain and fatigue, Plaintiff would need to take more than ten unscheduled breaks during the workday, each lasting an average of ten minutes. Tr. 1001. Plaintiff would have "good days" and "bad days." Tr. 1002.

Dr. Reuben believed that Plaintiff would not have trouble with being "off task" due to impairments to her concentration and attention and opined that Plaintiff was "capable of low stress work." Tr. 1001-02. When asked how often Plaintiff would miss work in a month, Dr. Reuben wrote "unknown." Tr. 1002.

The ALJ found Dr. Reuben's opinion "unpersuasive," noting that he "provided limited explanation in support of his opinions," and that his "explanations failed to point to objective evidence supporting the intensity of the opined limitations." Tr. 23. The ALJ also found that Dr. Reuben's opinion was inconsistent with the longitudinal record and with the findings of the Disability Determination Services consultant. *Id.*

In terms of supportability, Dr. Reuben's own treatment notes show that Plaintiff's "entire lumbar and cervical spine was recorded as within normal limits without pain noted." Tr. 956. While Plaintiff did have a positive straight leg raise test on her left side in May 2020, Tr. 928, and "mildly reduced" range of motion in June 2020 and December 2020, Tr. 931, 987, Dr. Reuben's other notes show negative straight leg raise tests, normal sensation, and normal range of motion. Tr. 954 (August 2020, negative straight leg raise, normal sensation); 956 (August 2020, normal range of motion); 960 (finding same); 962 (finding same); 964 (finding same); 966 (finding same); 968 (September 2020, finding same); 970 (finding same); 972 (finding same); 974 (October 2020, finding same); 978 (finding same); 979 (finding same); 981 (finding same); 983 (finding same); 985 (November 2020, finding same); 977 (October 2020, negative straight leg raise test, normal sensation).

In terms of consistency, the ALJ determined that Dr. Reuben's opinion was inconsistent with the state agency medical consultant's findings and with the longitudinal record. Tr. 23. The ALJ noted that, "while the claimant's gait was at times observed to be slow, she exhibited pain behavior, and she was assessed with relapsing polychondritis and chronic sinusitis, it was on other occasions noted—in contradiction to the intensity of her allegations—that her gait, station, pulmonary/chest effort, breathing sounds, and cardiovascular rate were normal, that her muscle strength was 5/5, that her extremity ranges of motion were full, and that her personal activities included household chores, walking, and international travel." Tr. 22. This finding is supported by the record. *See* Tr. 371 (noting normal gait,

normal range of motion); 418 (normal effort and breathing); 448 (normal breathing, normal, non-painful range of motion, normal strength); 537 (normal breathing, normal, non-painful range of motion); 677 (normal breathing, normal range of motion); 743 (normal breathing, normal gait and station); 800 (normal gait, normal breathing).

The Court concludes that the ALJ reasonably discounted the opinion of Dr. Reuben.

### B. Mr. Campo

Mr. Campo prepared a medical source statement for Plaintiff in December 2020. Mr. Campo opined that Plaintiff would have a 10% impairment during an eight-hour day in the following areas: the ability to understand and remember short and simple instructions; the ability to sustain ordinary routine without special supervision; the ability to accept instruction and respond appropriately to criticism from supervisors; and the ability to respond appropriately to changes in the work setting. Tr. 875-77. Mr. Campo assessed a 20% reduction in the following areas: ability to remember locations and work-like procedures; the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability maintain attention and concentration for extended periods; the ability to perform activities within a schedule; and the ability to complete a normal workday and work week without interruptions from psychological symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 875-76. Mr. Campo believed Plaintiff would be absent five or more days per month

as a result of her depression, anxiety, and relapsing polychondritis. Tr. 878. Plaintiff would also be off-task 30% of the time. *Id.*

The ALJ found Mr. Campo's opinion to be "unpersuasive," noting that Mr. Campo "included little explanation in support of his opinions." Tr. 23. The ALJ also found that Mr. Campo's limitations were "overly restrictive," and "inconsistent with, and unsupported by the longitudinal record." Tr. 23.

Here, the Court notes that Mr. Campo's opinion has, as the ALJ noted, little to no explanation to support the assessed limitations. Tr. 875-78. Mr. Campo's treatment notes indicated normal affect, speech, thought process, attention, perception, memory, and judgment. Tr. 1011. Mr. Campo's notes also show cooperative attitude, euthymic mood, unimpaired concentration and attention, and goal-directed thinking. Tr. 1014, 1016, 1018, 1020.

With respect to consistency, the ALJ found that Mr. Campo's opinion was inconsistent with the longitudinal record. This is supported by the record. Tr. 448 (November 2017, finding no depression or anxiety, normal judgment and insight, and euthymic mood); 508 (August 2018, finding normal mood, affect, and thought content); 537 (October 2017, finding no depression or anxiety, normal judgment, and euthymic mood); 704 (August 2018, normal mood, affect, and thought content); 743 (February 2018, finding normal judgment and insight); 771-72 (August 2019, finding "logical and coherent" thought content, goal-directed mental activity, adequate concentration, and good persistence); 805 (March 2020, finding anxious mood, but cooperative behavior, normal memory, and above average intellectual function); 879

(July 2020, finding anxious mood, but cooperative behavior and normal memory); 1011 (May 2020, finding normal affect, thought, attention, memory, and judgment); 1014 (June 2020, finding cooperative attitude, unimpaired attention and concentration, euthymic mood).

On this record, the Court concludes that the ALJ reasonably discounted the opinion of Mr. Campo.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED and this case is DISMISSED.

It is so ORDERED and DATED this ___8th___ day of December 2023.

        /s/Ann Aiken  
        ANN AIKEN  
        United States District Judge